IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RON O. MEYER-HAGEN, and
CHRISTIANS IN THE WORKPLACE
NETWORKING GROUP,

    Plaintiffs,

v.                                                            No. 24-cv-00741-SMD-JHR

NATIONAL TECHNOLOGY AND ENGINEERING
SOLUTIONS OF SANDIA, LLC, a wholly owned
Subsidiary of Honeywell International, Inc.,

    Defendant.

## MEMORANDUM ORDER

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss both causes of action in the Complaint, Doc.1, filed July 19, 2024. Doc. 6 ("Def.'s Mot. to Dismiss"). Plaintiffs filed their response on December 9, 2024. Doc. 13 ("Pls.' Resp."). Defendant filed their reply on January 10, 2025. Doc. 15 ("Def.'s Reply"). Upon review of the Parties' arguments and the relevant law, the Court will GRANT Defendant's Motion for Dismiss.

### BACKGROUND

**I.  Factual Background**

This case arises against a backdrop of prior litigation involving similar parties and closely related events. In April 2022, Christians in the Workplace Networking Group ("CWNG"), an employee resource group at Sandia National Laboratories, filed suit against National Technology and Engineering Solutions of Sandia, LLC ("Sandia"), a wholly owned subsidiary of Honeywell International. Compl. ¶ 155, *Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, No. 1:22-cv-00267(D.N.M. Apr.8, 2022). That earlier case, referred to as *CWNG I*, charged that Sandia violated Title VII of the Civil Rights Act of 1964 by failing to

accommodate CWNG's religious practices. Am. Compl. ¶¶ 71–74, *CWNG I*, No. 1:22-cv-00267 (D.N.M. Apr.8, 2022). During that litigation, CWNG sought leave to amend its complaint a second time to include a claim under the Religious Freedom Restoration Act ("RFRA"). The court denied the motion because Plaintiff already "knew of the underlying conduct but simply failed to raise [its] claims,' and they did not show a good cause." Mem. & Order, *CWNG I*, No. 1:22-cv-00267 (D.N.M. March 28, 2024); Pls.' Opp'n to Def.'s Mot. For Summ. J., *CWNG I*, No. 1:22-cv-00267 (D.N.M. June 23, 2023). On June 23, 2023, the court entered summary judgment for Sandia on the Title VII claim, finding that Sandia had reasonably accommodated CWNG. Mem. & Order at 11–13, *CWNG I*, No. 1:22-cv-00267 (D.N.M. March 28, 2024). When this case was filed, an appeal of the district court's ruling in *CWNG I* was still pending. The Tenth Circuit affirmed those rulings in July 2025. Order & J., *Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols of Sandia, LLC*, No. 24-2072, at 2 (10th Cir. July 29, 2025).

In June 2024, Plaintiff Ron O. Meyer-Hagen, a Sandia employee and CWNG member, joined with CWNG to bring this current case, referred to as *CWNG II*. Doc. 1 ("Pls.'Compl.") ¶ 1. The Complaint again challenges Sandia's decision to revoke CWNG's recognition and sponsorship, alleges a long history of different treatment. *Id.* ¶¶ 8–101. Specifically, the Complaint alleges a series of transaction from 1995 through 2020:

1. In 1997, CWNG sought Sandia's official recognition and sponsorship. Sandia initially denied the request, but CWNG ultimately obtained official status in 2000. *Id.* ¶¶ 11, 15.

2. In 2003, Sandia required CWNG to remove advertisements for events it deemed improper. *Id.* ¶¶ 23, 75.

3. Between 2011 and 2018, CWNG invited several outside speakers. Sandia either denied or rescinded approval for these events, or reimbursed CWNG only partially for expenses. *Id.* ¶¶ 24–27, 34–35.

4. In 2017, Sandia told CWNG leaders that a Christian-only group was not desirable and that an "all faiths" group was the preferred corporate practice. *Id.* ¶ 32.

5. In 2019, Sandia refused to approve CWNG's proposed film for the Diversity Cinema event. *Id.* ¶ 36

6. In 2019, Sandia ordered CWNG members to remove email signatures with Biblical verses and later reversed the decision. *Id.* ¶¶ 45–46, 82.

7. Sandia adopted a new policy (HR008) and a Diversity and Inclusion Plan regulating leadership of employee groups to be open to all employees, directing CWNG to amend its policies accordingly. *Id.* ¶¶ 41–44, 52, 96.

8. In 2020, after negotiations failed and CWNG stated that altering its leadership rules would compromise the group's Christian identity, Sandia revoked CWNG's sponsorship. *Id.* ¶¶ 53–64.

What is pled here mostly tracks *CWNG I*, and Plaintiffs concede as much. Pls.' Resp. at 12. They add, however, the following new allegations: Meyer-Hagen, individually and on behalf of CWNG, asked Sandia to reinstate CWNG; Sandia denied the request. CWNG then sought guidance on what activities it could continue without sponsorship; Sandia did not respond. *Id.* at 7.

Relying on these allegations, Plaintiffs assert two causes of action: first, that Sandia failed to provide a reasonable accommodation in violation of Title VII; and second, that Sandia

substantially burdened their religious exercise in violation of RFRA. Pls.' Compl. ¶¶ 105–108, 109–111.

In response, Sandia moved to dismiss both of Plaintiffs' causes of actions. Def.'s Mot. to Dismiss at 2. It argues that Plaintiffs' claims are barred under the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel). *Id*. at 1. According to Sandia, the claims either duplicate those already resolved in *CWNG I* or raise issues necessarily decided there. *Id*. Sandia also contends that Plaintiffs' RFRA claim fails independently because RFRA applies only to suits against the federal government, and because Title VII is the exclusive statutory remedy for federal employment discrimination on the basis of religion. *Id*. at 1, 9.

## II.     Legal Standards

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accepting all well-pled allegations as true and construing them in the light most favorable to the plaintiff, the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robinson v. Kuhr Trucking, LLC*, 831 F. App'x 385, 388 (10th Cir. 2020). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 556. Because the sufficiency of a plaintiff's claim is determined by the complaint, defendants generally cannot defeat an allegation by raising affirmative defenses. *Miller v. Shell Oil Co.*, 345

F.2d 891, 893 (10th Cir. 1965). The exception to this rule is "where the facts establishing the affirmative defense are apparent on the complaint's face." *Id.*

"Res judicata is an affirmative defense, but may be raised in a motion to dismiss if the facts supporting the defense appear on the face of the complaint, or in documents subject to judicial notice, if there is no factual dispute." *Navajo Nation v. Wells Fargo & Co.*, 344 F.Supp.3d 1292, 1302 (D.N.M. Sept. 25, 2018); *In re: Sprint Nextel Derivative Litig*, 437 F.Supp.3d 927, 935 (D. Kan. Feb, 3, 2020) ("A defendant may raise such a defense by a motion to dismiss for failure to state a claim, and the defense can be presented on records from prior cases involving the same parties . . . The court may take judicial notice of publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." (internal citations and quotation marks omitted)).

Likewise, collateral estoppel may also be properly raised in a Rule 12(b)(6) motion. *Thornton v. Kroger Co.*, No. CIV 20-1040 JB/JFR, 2022 WL 488932, at *52 (D.N.M. Feb. 17, 2022) ("Collateral estoppel is an affirmative defense . . . [A] defendant may properly raise the defense in a rule 12(b)(6) motion when the facts necessary to support the defense are apparent on the pleadings' face.").

### III. Analysis

#### A. Claim Preclusion

Claim preclusion, or res judicata, bars relitigating claims that were or could have been raised in a prior action. The doctrine applies when four elements are met: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255,

1257 (10th Cir. 1997) (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv*, 975 F.2d 683, 686 (10th Cir. 1992)). The burden rests with the party asserting preclusion. *Johnson v. Spencer*, 950 F.3d 680, 692 (10th Cir. 2020) (internal citations and quotation marks omitted).

### (1) Summary judgment in CWNG I was a final judgment on the merits.

Defendant contends that *CWNG I* ended in a final judgment on the merits because the district court granted summary judgment on the Title VII claim in its favor. Def.'s Mot. to Dismiss at 5; Def.'s Reply at 2. Plaintiffs disagree, arguing that summary judgment is not truly a merits judgment, that Meyer-Hagen was not a party to *CWNG I*, and that the case remains on appeal. Pls.' Resp. at 4–5.

The Court is not persuaded by these objections. Summary judgment is well established as a decision on the merits. *Apodaca v. Franco*, 1:15-CV-00061, 2016 WL 10257493, at *3 (D.N.M. Feb. 3, 2016) (citing *Solien v. Physicians Bus. Network, Inc.*, 22 F. Supp. 2d 1237, 1239 (D. Kan. 1998) (citing *Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992)); see also *Dowd v. Soc'y of St. Columbans*, 861 F.2d 761, 764 (1st Cir. 1988) ("Summary judgment constitutes a final judgment on the merits for purposes of applying res judicata."); *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (9th Cir. 1973) ("[T]he law is clear that summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata* in a subsequent action between the parties."). Nor does the pendency of an appeal undermine finality; in any event, the Tenth Circuit has since affirmed the district court's judgment, mooting Plaintiff's contention. Order & J., *CWNG I*, No. 24-2072, at 2 (10th Cir. July 29, 2025). The question of Meyer-Hagen's party status is not part of the final-judgment inquiry; it belongs under the identity-of-parties element. The first requirement of claim preclusion is satisfied.

### (2) Meyer-Hagen is in privity with CWNG.

The second element asks whether the parties in the two suits are the same or in privity. Claim preclusion extends beyond formal parties to those whose interests were adequately represented in the prior litigation. *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). The Tenth Circuit has recognized that the issue of whether an organization's actions bind its members can be complex. *Murdock*, 975 F.2d at 688 ("Courts sometimes hesitate to find privity where the interests of individual members diverge, since in those circumstances the organization may not adequately represent all members.").

Defendant argues this requirement is met: CWNG was a plaintiff in both suits, and Meyer-Hagen, though not named in *CWNG I*, is a member of CWNG and seeks relief wholly derivative of the group's status. Def.'s Mot. to Dismiss at 5–7; Def.'s Reply at 2–3. The only forms of relief he requests here are a declaratory judgment that Sandia's withdrawal of recognition violated RFRA and Title VII and a permanent injunction restoring CWNG, along with reasonable fees and costs. Pls.' Compl. at 20. None of this relief is personal to Mayer-Hagen; it flows entirely from CWNG's position as an association. Defendant cites *Murdock v. Ute Indian Tribe*, where the court held that an association member's later suit was barred because his claims and any potential relief rose and fell with the organization's. Def.'s Mot. to Dismiss at 6, citing *Murdock*, 975 F.2d at 689. As *Murdock* explained, "to the extent [the individual member] would benefit if relief were obtained, he would do so only in a derivative capacity owing to his status as a member of the [organization]," and in such a circumstance privity exists between the member and the association. *Id*.

Plaintiffs contend that Meyer-Hagen's rights were not adequately represented in *CWNG I* to try to distinguish *Murdock*. Pls.' Resp. at 4–5. They argue that *Murdock* concerns a dispute between two organizations over who is the authorized representative, a context different from the present suit. *Id*.

The Court reads *Murdock* differently. *Murdock* held that when a member seeks only claims and remedies that depend on the association's status, he stands in privity with the association. *Murdock*, 975 F.2d. The same is true with Meyer-Hagen. Every claim and remedy he asserts turns on CWNG's recognition and treatment at Sandia. Pls.' Compl. at 20. Because CWNG was the plaintiff in *CWNG I*, the interests Meyer-Hagen advances in this action were already represented in the prior case, assuming the other elements of claim preclusion are met. As the Tenth Circuit explained in *Murdock*, to hold otherwise would lead to an untenable result. *Murdock*, 975 F.2d at 689. If a judgment concerning an association's status did not bind its members, then each member could relitigate the association's status until a favorable outcome was reached. *Id*. The second element is satisfied.

### (3) Both suits arise from the same nucleus of common facts.

The third element requires that the later suit involve the same cause of action. "Suits involve the same claim (or cause of action) when they arise from the same transaction or involve a common nucleus of operative facts." *Lucky Brand Dungarees, Inc. v. Marcel Fashion Grp., Inc.*, 590 U.S. 405, 412 (2020). The Tenth Circuit applies the "transactional approach": "[A] cause of action includes all claims or legal theories that arise from the same transaction, event, or occurrence. It is immaterial that the legal basis for the relief sought in the two complaints is different; it is the occurrence from which the claims arose that is central to the "cause of action' analysis." *Nwosun*, 124 F.3d at 1257; *Wilkes v. Wyo. Dep't of Emp't*, 314 F.3d 501, 504 (10th Cir. 2002).

Defendant argues this requirement is satisfied. Def.'s Mot. to Dismiss at 7; Def.'s Reply at 3–4. Both suits challenge Sandia's revocation of CWNG's recognition and failure to reasonably accommodate CWNG's religious activities. Def.'s Mot. to Dismiss at 7. The complaint in *CWNG*

*II* merely reframes those allegations and includes allegedly new facts regarding reinstatement, which Defendant characterizes as a repackaged demand for the same relief denied in *CWNG I*. *Id*.

Plaintiffs respond that *CWNG II* is different. Pls.' Resp. at 6–8. They emphasize Sandia's refusal to reinstate CWNG after the first judgment, Meyer-Hagen's appearance as plaintiff, and the addition of a RFRA claim. *Id*. at 7. They also contend that further discovery in this case may bring new facts to light. *Id*.

The Court is not persuaded. The doctrine of res judicata precludes parties from relitigating issues that were or could have been raised. *Clark v. Haas Grp., Inc.*, 953, F.2d 1235, 1238 (10th Cir. 1992). A plaintiff cannot evade preclusion by later supplementing his complaint with facts from the same transaction or simply alleging new legal theories, "in the hope of bringing a new action arising out of the same transaction on some latter occasion." *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170. (10th Cir. 2000). Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts. *Goodwin v. Hatch*, 781 F. App'x. 754, 760 (10th Cir. 2019) (citing *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006)).

Although Plaintiffs assert that their claims rest on newly discovered facts arising after *CWNG I*, such as Sandia's refusal to reinstate CWNG and its failure to communicate expectations, "under the transactional test, a new action based on new facts will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts." *Goodwin*, 781 F. App'x at 760 (citing *Hatch*, 471 F.3d at 1150). The operative facts remain the same: Sandia's decision to withdraw recognition and to deny CWNG's requests for accommodation. The third element is satisfied.

### (4) Plaintiffs had a full and fair opportunity to litigate in CWNG I.

The final element asks whether the prior action gave plaintiffs a full and fair opportunity to litigate. The Tenth Circuit treats this as a narrow due process safeguard, triggered only when "the requirements of due process were not afforded — where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings." *Johnson*, 950 F.3d at 708–09.

Plaintiffs argue they lacked a full and fair opportunity to litigate in *CWNG I* because Meyer-Hagen was not named a plaintiff, relevant facts may have gone undiscovered, and that their RFRA claim was excluded as untimely in *CWNG I*. Pls.' Resp. at 8. Meyer-Hagen's privity with CWNG has already been addressed. As discussed above, the alleged new facts all concern the same underlying claim – Sandia's withdrawal of recognition and refusal to accommodate – which does not establish a new and independent claim outside the reach of claim preclusion. *Velasquez v. Halliburton Energy Servs., Inc.*, No. CIV 11-0321 RB/GBW, 2011 WL 13284625, at *6 (D.N.M. Oct. 19, 2011). With respect to the RFRA claim Plaintiffs now raise, they also sought to add it in *CWNG I*, and the court denied leave to amend. Mem. & Order, *CWNG I*, No. 1:22-cv-00267 (D.N.M. Mar. 28, 2024). Both the district court and the Tenth Circuit found that CWNG knew the underlying facts yet failed to show good cause under Rule 16. *Id.*; Order & J., *CWNG I*, No. 24-2072, at 2 (10th Cir. July 29, 2025).

CWNG could have raised the RFRA claim in *CWNG I* but chose not to. That is precisely the piecemeal litigation that claim preclusion forbids. Plaintiffs cannot revive it now in a new lawsuit.

Considering the foregoing, none of these establishes a due process defect within the narrow exception. As discussed under the second element of party identity, Meyer-Hagen's interests were aligned with CWNG, which litigated on behalf of its members. His absence in *CWNG I* does not constitute a denial of due process. In addition, preclusion extends to claims that could have been

raised, even if they were denied as untimely. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). The Court therefore finds that *CWNG I* provided Plaintiffs a full and fair opportunity to litigate, and the fourth element is satisfied.

### B. The issue of whether Sandia provided reasonable accommodation as required by Title VII was actually litigated and necessarily decided in CWNG I.[1]

Issue preclusion, or collateral estoppel, prevents relitigating issues actually litigated and necessarily decided in a prior proceeding. The doctrine applies when: (1) the issue previously decided is identical; (2) the prior action ended in a final judgment; (3) the party against whom preclusion is asserted was a party or in privity; and (4) the issue was actually litigated and necessary to judgment. *Keller Tank Sers. II, Inc. v. Comm'r of Internal Revenue*, 854 F.3d 1178, 1193 (10th Cir. 2017). Elements (2), (3), and (4) mirror claim preclusion and are satisfied for the reasons already discussed. The distinct question here is whether the issues Plaintiffs now raise were actually litigated and necessarily decided in *CWNG I*. *Apodaca*, 2016 WL 10597439, at *2.

Defendant argues that they were. Def.'s Mot. to Dismiss at 8–9; Def.'s Reply at 5–6. In *CWNG I*, the court entered summary judgment for Sandia, holding that Sandia's withdrawal of

---

[1] Neither party raises it, but the Court notes that the governing law on what a plaintiff must show to establish a prima facie case under Title VII has changed since *CWNG I*. Even when the elements of issue preclusion are met, an exception may be warranted if there has been an intervening change in the applicable legal context. *Herrera v. Wyoming*, 587 U.S. 329 (2019).

In 2024, the Supreme Court held in *Muldrow v. City of St. Louis* that a plaintiff need only show some injury with respect to a term or condition of employment to establish an adverse employment action, rejecting the prior "significant change in employment status" standard that had prevailed in this Circuit. *Muldrow v. City of St. Louis*, 601 U.S. 346, 353–54 (2024). The Tenth Circuit has previously defined adverse employment actions as those that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Order & J., *Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols of Sandia, LLC*, No. 24-2072, at 11 (10th Cir. July 29, 2025).

That change does not affect the analysis here. As the Tenth Circuit explained on appeal, Plaintiffs in *CWNG I* failed to preserve any argument regarding the elements of their prima facie case, and that waiver is preclusive before this Court.

sponsorship and related actions nonetheless provided reasonable accommodation of CWNG's religious exercise under Title VII. Mem. & Order at 11–13, *CWNG I*, No. 1:22-cv-00267 (D.N.M. Mar. 28, 2024). Defendant argues that Plaintiffs cannot relitigate that determination under Title VII or by repackaging it under RFRA. Def.'s Reply at 6. Plaintiffs contend that Sandia's refusal to reinstate CWNG presents a new issue, and that further discovery may uncover additional facts. Pls.' Resp. at 11. They argue that these new facts are material to judgment and defeat collateral estoppel. *Id*.

The Court agrees with Defendant. The central issue in both suits is whether Sandia reasonably accommodated plaintiff's' religious practice. Plaintiffs' present causes of action, though framed under new legal theories, still reduce to the allegation that Sandia failed to accommodate, an issue squarely before the court in *CWNG I*. Adding RFRA as a new statutory label does not reopen the issue. The fourth element is therefore satisfied, and plaintiffs are barred by issue preclusion from relitigating the accommodation question.

### C. RFRA does not apply to Sandia, and even if it did, Title VII is the exclusive remedy for employment-related religious discrimination.

RFRA prohibits the government from substantially burdening religious exercise absent a compelling interest and least restrictive means. 42 U.S.C. § 2000bb-1. Courts construe "government" to mean the federal government and its officials, not private contractors. *Clark v. Newman Univ.*, No. 19-1033-KHV, 2022 WL 4130828, at *12 (D. Kan. Sept. 12.2022).

Defendant argues that Plaintiffs' RFRA claim fails for an independent reason apart from the preclusion doctrines. Def.'s Mot. to Dismiss at 9; Def.'s Reply at 6–8. In their new RFRA claim, Plaintiff cast Sandia in the role of the federal government and attempt to hold it liable for employment-related religious discrimination. Def.'s Mot. to Dismiss at 9. Defendant does not concede that Sandia is a government actor, but argues that even if it were treated as one, the RFRA

claim would still fail because Title VII provides the exclusive statutory remedy for federal employees alleging religious discrimination in employment. *Id.*

Plaintiffs respond that RFRA's text is broad and does not explicitly limit its reach to the federal government. Pls.' Resp. at 13. They cite a series of cases in support of their contention that RFRA creates a cause of action against private entities. *Id.* at 13–15.

Plaintiffs are correct that the Tenth Circuit has not expressly addressed whether RFRA applies in suits by private parties seeking to enforce federal other private entities. But that silence weighs against Plaintiffs. The very case they invoke, *Clark*, concludes that RFRA does not apply to suits between private parties, and no Tenth Circuit authority has suggested otherwise. *Clark*, 2022 WL 4130828, at *12. District courts within the Circuit likewise have declined to apply RFRA to claims against purely private defendants. *Id.* The cases that Plaintiffs rely on are inapposite: each involved a private defendant sued under a federal statute and then asserting RFRA defensively to argue that the federal statute itself imposed a substantial burden. *Clark*, 2022 WL 4130828, at *12; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir.2013); *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). None of those decisions supports extending RFRA to authorize affirmative claims against private entities. *Id.*

Plaintiffs further contend that Title VII is not their exclusive remedy, citing language from *Bostock v. Clayton County* and the Tenth Circuit decision in *Hobby Lobby Stores, Inc. v. Sebelius*. Specifically, they point to *Bostock*'s remark that "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases," and to *Sebelius*'s statement that "these exemptions show that Congress knows how to craft a corporate religious exemption, but chose not to do so in RFRA." Pls.' Resp. at 14–15. Plaintiffs invoke these passages to argue, first,

that RFRA may displace or run parallel to Title VII, and second, that Sandia does not have any exemption under RFRA. Both arguments misconstrue the cases.

In *Bostock*, the Court was not holding that RFRA displaces or coexists with Title VII's remedial scheme. *Bostock*, 590 U.S. at 682. Rather, the Court was addressing concerns that its ruling under Title VII might force employers to compromise their religious beliefs. *Id*. It noted that the First Amendment and RFRA may raise the same worries, and it expressly left those questions for future cases. *Id*. Plaintiffs take the "super statute" language out of context.

Nor does *Hobby Lobby* support Plaintiffs. That case concerned whether RFRA protected for-profit corporations from the Affordable Care Act's contraceptive mandate. *Hobby Lobby*, 723 F.3d at 1130. The Court's reference to congressional exemption was directed at distinguishing nonprofit from for-profit entities; it had nothing to do with Title VII or the exclusivity of its remedy. *Id*. Title VII appeared n *Hobby Lobby* only by way of analogy not as a cause of action. *Id*.

Plaintiffs therefore cannot use RFRA as a parallel vehicle to insert a new claim and start a new lawsuit, even if claim preclusion does not bar it. Either way, the RFRA claim cannot proceed.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Complaint is **GRANTED** in full.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**